## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: <u>1:24-cv-00529</u>

BRANDI BUTLER and
THERESE LISCIO, individually, and on behalf of
others similarly situated,

     *Plaintiffs,*

vs.

ASURA TECHNOLOGIES USA, INC. and
PARKING REVENUE RECOVERY SERVICES INC.,

     *Defendants.*

---

## CLASS ACTION COMPLAINT

Plaintiffs Brandi Butler and Therese Liscio, on behalf of themselves and others similarly situated in the United States, by and through their undersigned counsel, hereby file this Class Action Complaint and state as follows based on investigation and information and belief:

## INTRODUCTION

1.    For their own financial gain, Defendant Asura Technologies, Inc. ("Asura") and Defendant Parking Revenue Recovery Services, Inc. ("PRRS" or collectively, "Defendants"), systematically and knowingly violate consumer privacy law by improperly obtaining, using, and disclosing personal information from the records of State Departments of Motor Vehicles ("SDMV").

2.      Defendants provide so-called "parking compliance services" to hundreds of parking locations throughout the United States.

3.      Defendants use cameras, AI technology and automatic data collection to record information about vehicles that park in monitored parking areas.

4.      Among other things, Defendants capture images of vehicles as they enter and exit the parking areas, including by recording images of vehicle license plates.

5.      Defendants use this vehicle monitoring and recording to support their parking "compliance" system.

6.      In Avon, Colorado, for example, Defendants have installed cameras and conduct parking monitoring and enforcement in the properties operated by Hoffmann Commercial Real Estate, which include parking areas for patrons of restaurants and shops.

7.      Posted signs in the monitored areas state that the "PARKING LOT IS CAMERA ENFORCED" and set forth the parking rates, which include a complementary parking period followed by a tiered payment requirement based on the length of the parking stay.

8.      The payment instructions on the posted signs establish an identical $87.00 fee for non-payment, expired parking, payment after a grace period, unauthorized parking, or incorrect license plate on payment.

9.      The signs instruct individuals to contact Five Star Valet for "Help Contact Information" and PRRS to dispute a notice.

10.     If an individual parks for more time than allotted, or fails to pay for their parking, Defendants use the captured images of the parked vehicles to automatically obtain owner data from SDMV in order to issue a "Parking Notice".

11.     Defendants' parking system is riddled with issues. In fact, so many people have been issued Parking Notices in error in Avon that PRRS entered into a settlement with the Colorado Attorney General's Office based on the wrongful service of almost 450 collection notices.

12.    This case, however, does not seek a remedy for Defendants' flawed and inconsistent parking monitoring. Instead, this case focuses on Defendants' violation of the Drivers Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* ("DPPA") based on their obtaining, use, and disclosure of personal information from SDMV to issue collection notices.

13.    The DPPA was specifically enacted to protect the privacy of personal information assembled by SDMV, including the names, images, and address information of vehicle owners.

14.    In direct violation of the DPPA, Defendants use the vehicle images that are captured in the monitored parking areas to obtain, use, and disclose personal information, including the private name and address information, of vehicle owners.

15.    Defendants admit: "In case there is overstay or no payment for a vehicle, owner data are automatically retrieved from the local vehicle database (DMV in the US) using the license plate number as reference. Once the owner data is retrieved, a citation is automatically generated in print and/or post-ready format." *See* https://asuratechnologies.com/solutions/frictionless-parking-enforcement/ (last accessed January 22, 2024).

16.    Defendants use this system to issue a staggering number of citations—more than 40,000 per month—in express violation of the DPPA.

17.    Defendants' conduct and the history of the citations issued reflects that Defendants' business model is not to generate fees from parking but rather to generate fees from the purported violations.

18.    Plaintiffs bring this putative class action on behalf of all individuals whose personal information has been improperly obtained, used and/or disclosed by Defendants in violation of the DPPA.

## JURISDICTION AND VENUE

19.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2)

members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

20.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically, the Drivers Privacy Protection Act, 18 U.S.C. § 2721 *et seq*.

21.     This Court has personal jurisdiction over Defendant Parking Revenue Recovery Services Inc. because Defendant has its principal place of business in Colorado, Defendant is authorized to do business and in fact does business in this judicial district, and the wrongful acts alleged herein were committed in substantial part in Colorado.

22.     This Court has personal jurisdiction over Defendant Asura Technologies USA, Inc. because Defendant has its principal place of business in Colorado, Defendant is authorized to do business and in fact does business in this judicial district, and the wrongful acts alleged herein were committed in substantial part in Colorado.

23.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants reside in this District and engage in continuous and systematic business activities within the State of Colorado. Moreover, a substantial part of the events and conduct giving rise to the claims alleged herein occurred in this district.

## PARTIES

24.     Plaintiff Brandi Butler is a natural person who resides in the State of Kansas. As described herein, Ms. Bulter's personal information was obtained, used, and disclosed by Defendants in violation of the DPPA. Plaintiff's claim is typical of all Class members in this regard.

25.     Plaintiff Therese Liscio is a natural person who resides in the State of Colorado. As described herein, Ms. Liscio's personal information was obtained, used, and disclosed by Defendants in violation of the DPPA. Plaintiff's claim is typical of all Class members in this regard.

26.     Defendant Parking Revenue Recovery Services Inc. is a Colorado corporation with its principal place of business in Aurora, Colorado.

27.     Defendant Asura Technologies USA, Inc. is a Colorado Corporation with it principal place of business in Aurora, Colorado.

28.     At all times material hereto, Defendants were conducting business in the United States, including in this judicial district.

29.     Defendants and their agents committed the unlawful acts described herein in this judicial district and throughout the United States.

30.     The unlawful acts giving rise to Plaintiffs' claims occurred in this jurisdiction and in this judicial district.

## FACTUAL ALLEGATIONS

### A.     The Drivers Privacy Protection Act (DPPA)

31.     The DPPA, 18 U.S.C. § 2721 *et seq*., was enacted in 1994 to protect the privacy of personal information assembled by State Departments of Motor Vehicles.

32.     The DPPA prohibits the obtaining, use, and disclosure of personal information and highly restricted personal information obtained in connection with a motor vehicle record.

33.     "Personal information" includes: "an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . ." *See* 18 U.S.C. § 2725 (referred to herein as "Personal Information").

34.     "Highly restricted personal information means an individual's photograph or image, social security number, medical or disability information." *Id*.

35.     Personal Information may be disclosed under certain, limited circumstances, such as issues related to motor vehicle safety or for use by the government in carrying out its functions. *Id*. § 2721.

36.     As described in detail in the First Cause of Action, there is no exception to the DPPA that permits access to, use or disclosure of Personal Information under the circumstances at issue in this action.

37.     "A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." *Id*. § 2724.

38.     The Court may award actual damages of no less than $2,500 for violation of the DPPA. *Id.*

39.     The Court may also award (1) punitive damages "upon proof of willful or reckless disregard of the law"; (2) "reasonable attorneys' fees and other litigation costs reasonably incurred"; and (3) "such other preliminary and equitable relief as the court determines to be appropriate." *Id.*

**B.      Defendants Use Video Analytics and AI for Parking Enforcement**

40.     According to its website, parkingprrs.com, PRRS "is a parking compliance company[…] [O]ur client owners and parking operators use our services in all types of properties, including commercial lots and garages, municipal facilities, college and university facilities, airports, hospitals, commercial properties and residential buildings." *See* parkingprrs.com (last accessed January 22, 2024).

41.     PRRS provides services to more than 400 parking locations and issues more than 40,000 parking notices per month. *Id.*

42.     PRRS uses a video analytics system called "ARC", which it claims "delivers an average 98% read rate on the sites monitored by PRRS /ARC. This performance is exceptionally high in a free flow environment, enabled by the careful positioning of cameras, AI-based

triggering, and the capability of LPR software to read license plates even from difficult angles." *Id*.

43.     PRRS uses video analytics technology from Asura Technologies (Asura).  *See* asuratechnologies.com, last visited January 22, 2024 ("In our joint venture with Parking Revenue Recovery Services (Denver, USA), we have established an automated parking compliance solution package tailored to local market demand.").

44.     According to the asuratechnologies.com website, in 2019, GB Partners Venture Capital Fund acquired a majority stake in the Hungarian company.  *See* https://asuratechnologies.com/about-us/#meet-asura (last visited January 22, 2024).

45.     In 2021, GB Partners invested $3.2 billion "in the company's U.S. subsidiary, Asura Technologies USA Inc., thus obtaining majority ownership in Denver-based Parking Revenue Recovery Services Inc. (PRRS).  The acquisition combined PRRS's over 20 years of parking enforcement experience with Asura Technologies' innovative automation and video analytics expertise, creating a unique parking enforcement automation system that continuously monitors parking spaces in twenty-one states." *Id*.

46.     Asura uses "artificial intelligence - neural networks - to process the camera image, reducing the hardware complexity of the systems delivered and increasing efficiency." *See* https://asuratechnologies.com/technology/ai-and-machine-learning/ (last visited January 22, 2024).

47.     Asura uses "automating data collection, surveillance and [conducts] security activities." *Id*.

48.     Among its "Proprietary Engines", Asura touts its "License Plate Recognition Engines" that result in a "recognition rate of over 98%".  *Id*.

C.      **Defendants Violate the DPPA**

49.      Defendants use an unlawful system for parking enforcement, which they refer to as their "Frictionless Parking Enforcement" system. Utilizing "touchless parking enforcement automation using ALPR and video analytics technology as the core. The solution registers vehicles entering and leaving the parking compound and automatically matches the length of the stay with payment data, thus providing a precise and comprehensive alternative to manual parking enforcement."    https://asuratechnologies.com/solutions/frictionless-parking-enforcement/    (last visited January 22, 2024).

50.      Through the Frictionless Parking Enforcement system, Defendants automatically obtain, use and disclose Personal Information from SDMV: "In case there is overstay or no payment for a vehicle, owner data are automatically retrieved from the local vehicle database (DMV in the US) using the license plate number as reference. Once the owner data is retrieved, a citation is automatically generated in print and/or post-ready format." *Id.*

51.      Defendants' obtention, use and disclosure of Personal Information violates the DPPA.

52.      Defendants knowingly violate the DPPA.

53.      Among other things, Defendants have express knowledge of the DPPA and its requirements.

54.      On its website, PRRS expressly states: "LEGAL COMPLIANCE: PRR's compliance services are grounded upon legal and best practice compliance. PRRS strives to comply with the Fair Debt Collection Practices Act, the Driver's Privacy Protection Act, and all other applicable laws. We work to ensure the data we manage is protected, and we never sell customer data to 3rd parties." https://www.parkingprrs.com/company.html. (last visited January 12, 2024).

55.     PRRS knew or should have known that its representations regarding "Legal Compliance" made on its website and set forth in paragraph 54 were false and misleading.

56.     In addition, Defendants transfer "unresolved notices (violations not paid, settled, or dismissed)" to their "Attorney Collection Program to encourage payment." https://www.parkingprrs.com/services.html. (last visited January 12, 2024).

57.     The attorney collectors, and on information and belief other attorneys and individuals who work with Defendants, knowingly violate the DPPA.

**Facts Related to Plaintiff Butler**

58.     On or about November 18, 2023, Ms. Butler parked her car in a parking lot owned by Hoffman Real Estate. Neither the signage in the parking lot nor any text from the linked QR code informed Ms. Butler that Defendants would use her license plate information to obtain her personal information from a SDMV.

59.     On or about December 3, 3023, PRRS sent a Parking Notice, Number FSVEGE-002655, to Ms. Bulter at her home address in Kansas.

60.      The Notice states that it was issued on November 18, 2023.

61.     According to the Notice, a vehicle bearing Plaintiff's license plate number was "parked on private property on the date of issuance and was in breach of the posted rules and use limitations of the property identified above."

62.      According to the Notice, the parking location was "CO, Avon, 82 E Beaver Creek Boulevard."

63.     According to the Notice, the "Violation" was "No payment received."

64.     According to the Notice, the "Balance Due" is $87.00.

65.     The Notice states: "The Parking Operator and Parking Revenue Recovery Services, Inc. are NOT governmental or affiliated agencies."

66.     The Notice also states: "After 30 days from the date of the notice, the account will be considered in default and assigned to a debt collector."

67.     The Notice further states: "The above vehicle may be subject to towing or booting, and the owner may be liable for additional costs and fees, to the extent permitted by law."

68.     The Notice bears two images of the rear of a vehicle, which are stamped "[Entry]: 11/18/2023 12:06 PM (MT)" and "[Exit]: 11/18/2023 2:07 PM (MT)".

69.     According to the Notice, the vehicle was parked for two hours and one minute.

70.     On or about January 15, 2024, "Daniel B. Kelley Attorney at Law" sent a letter to Ms. Butler at her home address in Kansas.

71.     The letter states that the "law firm of Daniel B. Kelley represents the Creditor named below concerning the PARKING NOTICE and BALANCE DUE stated below which are in COLLECTION. We will use any information you give us to help collect this Debt."

72.     The letter reiterates certain information from the Parking Notice, including: (i) that the Parking Notice was issued from PRRS, (ii) Ms. Butler's License Plate Number, (iii) the Notice Number, (iv) the Date of Notice, (v) the Location, (vii) the Notice Reason, and (vii) the "Balance Due on date of Notice".

73.     Defendants captured and recorded Ms. Butler's vehicle information and license plate number, including when she entered and exited the parking area.

74.     Defendants used Ms. Butler's license plate information to obtain Ms. Butler's Personal Information from SDMV.

75.     Defendants used Ms. Butler's Personal Information to generate and send the Parking Notice.

76.     In addition, Defendants disclosed Ms. Butler's Personal Information to Daniel B. Kelley, Attorney at Law.

77.     At no time did Ms. Butler provide Defendants with her Personal Information.

78.     At no time did Ms. Butler provide Defendants with consent to obtain, use or disclose her Personal Information pursuant to 18 U.S.C. § 2721(b)(13).

79.     At no time did Ms. Butler provide Defendants with consent to obtain, use or disclose her Personal Information. Nor did Ms. Butler consent to Defendants using her license plate number for the reverse look-up of her Personal Information through governmental records.

80.      At no time did Ms. Butler provide any State or State DMV with her express consent to use or disclose her Personal Information.

81.     At no time did Plaintiff Butler enter into any contract with Defendants.

**Facts Related to Plaintiff Liscio**

82.     Ms. Liscio has parked her car in a parking lot owned by Hoffman Real Estate on a regular basis, giving rise to numerous purported Parking Notices from PRRS and numerous purported collection letters from "Daniel B. Kelley Attorney at Law."

83.     For example, on or about November 27, 2023, Ms. Liscio parked her car in a parking lot owned by Hoffman Real Estate.  Neither the signage in the parking lot nor any text from the linked QR code informed Ms. Liscio that Defendants would use her license plate information to obtain her personal information from a SDMV.

84.     On or about December 10, 3023, PRRS sent a Parking Notice, Number FSVEGE-002655, to Ms. Liscio, to her home address in Colorado.

85.      The Notice states that it was issued on November 27, 2023.

86.     According to the Notice, a vehicle bearing Ms. Liscio's license plate number, was "parked on private property on the date of issuance and was in breach of the posted rules and use limitations of the property identified above."

87.     According to the Notice, the parking location was "CO, Avon, 240 Chapel Place".

88.     According to the Notice, the "Violation" was "No payment received."

89.      According to the Notice, the "Balance Due" is $87.00.

11

90.     The Notice states: "The Parking Operator and Parking Revenue Recovery Services, Inc. are NOT governmental or affiliated agencies."

91.      The Notice also states: "After 30 days from the date of the notice, the account will be considered in default and assigned to a debt collector."

92.      The Notice further states: "The above vehicle may be subject to towing or booting, and the owner may be liable for additional costs and fees, to the extent permitted by law."

93.     The Notice bears two purported images of a vehicle, which are stamped "[Entry]: 11/27/2023 9:39 AM (MT)" and "[Exit]: 11/27/2023 5:32 PM (MT)".

94.     The second image is taken at night and is essentially a black square with what could be lights in the image. There is no way to verify from the second image whether it is a picture of Ms. Liscio's vehicle.

95.      On or about January 15, 2024, "Daniel B. Kelley Attorney at Law" sent a letter to Ms. Liscio at her home address in Colorado.

96.     The letter states that the "law firm of Daniel B. Kelley represents the Creditor named below concerning the PARKING NOTICE and BALANCE DUE stated below which are in COLLECTION. We will use any information you give us to help collect this Debt."

97.     The letter reiterates certain information from the Parking Notice, including: (i) that the Parking Notice was issued from PRRS, (ii) Plaintiff Liscio's License Plate Number, (iii) the Notice Number, (iv) the Date of Notice, (v) the Location, (vii) the Notice Reason, and (vii) the "Balance Due on date of Notice".

98.     Defendants captured and recorded Ms. Liscio's vehicle information and license plate number, including when she entered and exited the parking area.

99.     Defendants used Ms. Liscio's license plate information to obtain Ms. Liscio's Personal Information from SDMV.

100.    Defendants used Ms. Liscio's Personal Information to generate and send the Parking Notice.

101.    In addition, Defendants disclosed Ms. Liscio's Personal Information to Daniel B. Kelley, Attorney at Law.

102.    At no time did Ms. Liscio provide Defendants with her Personal Information.

103.    At no time did Ms. Liscio provide Defendants with consent to obtain, use or disclose her Personal Information pursuant to 18 U.S.C. § 2721(b)(13).

104.    At no time did Ms. Liscio provide Defendants with consent to obtain, use or disclose her Personal Information. Nor did Ms. Liscio consent to Defendants using her license plate number for the reverse look-up of her personal information through governmental records.

105.    At no time did Ms. Liscio provide any State or SDMV with her express consent to use or disclose her Personal Information.

106.    At no time did Ms. Liscio enter into any contract with Defendants.

**Facts Related to Class Members**

107.    Defendants' violation of the DPPA affects individuals in virtually every state.

108.    Defendants admit that they monitor parking facilities throughout the United States.

109.    This monitoring includes the capture and recording of vehicle and license plate information.

110.    Defendant PRRS uses the vehicle and license plate information to access individual, Personal Information that is recorded by SDMV.

111.    Defendants use the Personal Information to send Parking Notices to the addresses registered with SDMV.

112.    According to Defendants, this monitoring results in the issuance of more than 40,000 Parking Notices each month.

113.    The address information may be different from the location where the individual was parked. For example, Ms. Butler received a Parking Notice at her address in Kansas based on a purported parking violation that occurred in Colorado.

114.    At no time did Class members provide Defendants with their Personal Information or consent to obtain, use, or disclose their Personal Information pursuant to 18 U.S.C. § 2721(b)(13).

115.    Defendants violate the DPPA every time "owner data [is] automatically retrieved from the local vehicle database (DMV in the US) using the license plate number as reference." https://asuratechnologies.com/solutions/frictionless-parking-enforcement/.

## CLASS DEFINITION AND CLASS ALLEGATIONS

116.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves, on behalf of all others similarly situated, and as a member the Class defined as follows:

> All people who were issued a drivers' license or other form of identification from a Department of Motor Vehicle in the United States who, within the applicable statute of limitations period, received a Parking Notice from Defendant Parking Revenue Recovery Services Inc. (the "Class").

117.    Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

118.     Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

119.     This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

120.     Numerosity:  Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of hundreds of thousands of individuals throughout the United States. Accordingly, it would be impracticable to join all members of the Class before the Court.

121.     Common Questions Predominate:  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- •    Whether Defendants, or either Defendant, violated the Drivers Privacy Protection Act, 18 U.S.C. § 2721 *et seq*.;
- •    Whether Plaintiffs and the Class have sustained damage as a result of Defendants' unlawful conduct; and
- •    The proper measure of damages sustained by Plaintiffs and the Class.

122.     Typicality: Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because Plaintiffs, like the Class members, received Parking Notice letters at their addresses registered with SDMV, which Defendants obtained in violation of the DPPA. Defendants' unlawful, actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiffs and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

123.    Adequacy: Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the members of the Class Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in privacy litigation.

124.    Superiority and Substantial Benefit: A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.      The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.      Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c.      Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d.      When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs

and members of the Class can seek redress for the harm caused to them by Defendants.

125.    Because Plaintiffs seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

126.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

127.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### FIRST CAUSE OF ACTION
### Violation of the Drivers Privacy Protection Act, 18 U.S.C. § 2721 *et seq.*
### (for Plaintiffs and the Class)

128.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

129.    The DPPA, 18 U.S.C. § 2722(a), prohibits any person, organization, or entity from knowingly obtaining or disclosing "personal information, from a motor vehicle record, for a purpose not permitted under [§ 2721(b) of the DPPA]."

130.    The DPPA defines "person" to mean "an individual, organization or entity." 18 U.S.C. § 2725(2). Defendants are therefore "persons" under the DPPA.

131.    The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability

information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

132.    The DPPA defines "motor vehicle record" to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).

133.    In violation of the DPPA, Defendants knowingly obtained, used and/or disclosed Personal Information from motor vehicle records.

134.    Defendants obtained, used, and/or disclosed Personal Information for a purpose not permitted under § 2721(b) of the DPPA:

135.     Defendants did not obtain, use or disclose Personal Information in connection with matters of motor vehicle or driver safety and theft. *See* § 2721(b).

136.    Defendants did not obtain, use or disclose Personal Information in connection with matters of motor vehicle emissions. *Id*.

137.    Defendants did not obtain, use or disclose Personal Information in connection with matters of motor vehicle product alterations, recalls, or advisories.  *Id*.

138.    Defendants did not obtain, use or disclose Personal Information in connection with matters of performance monitoring of motor vehicles and dealers by motor vehicle manufacturers. *Id*.

139.    Defendants did not obtain, use or disclose Personal Information in connection with matters of removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 *et seq*.), or the Clean Air Act (42 U.S.C. 7401 *et seq*.).  *Id*.

140.    Defendants did not obtain, use or disclose Personal Information for use in connection with carrying out the purposes of chapters 301, 305, and 321–331 of title 49 (subsection

(a)(2)) for use: by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions; in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers. *See* § 2721(b)(1)-(2).

141.    Defendants did not obtain, use or disclose Personal Information in connection with the normal course of business by a legitimate business or its agents, employees, or contractors, to (A) verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; or (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual. *See* § 2721(b)(3)(A)-(B).

142.    Defendants did not obtain, use or disclose Personal Information for use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court. *See* § 2721(b)(4).

143.    Defendants did not obtain, use or disclose Personal Information for use in connection with research activities, or for use in producing statistical reports (where such personal information is not published, redisclosed, or used to contact individuals). *See* § 2721(b)(5).

144.    Defendants did not obtain, use or disclose Personal Information for use in connection with any insurer or insurance support organization, or by a self-insured entity, or its

agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting. *See* § 2721(b)(6).

145.    Defendants did not obtain, use or disclose Personal Information for use in connection with providing notice to the owners of towed or impounded vehicles. *See* § 2721(b)(7).

146.    Defendants did not obtain, use or disclose Personal Information for use in connection with any licensed private investigative agency or licensed security service for any purpose permitted under subsection 2721(b). *See* § 2721(b)(8).

147.    Defendants did not obtain, use or disclose Personal Information for use in connection with an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49. *See* § 2721(b)(9).

148.    Defendants did not obtain, use or disclose Personal Information for use in connection with the operation of private toll transportation facilities. *See* § 2721(b)(10).[1]

149.    Defendants did not obtain, use or disclose Personal Information for use in connection with a response to requests for individual motor vehicle records where a State has obtained the express consent of the person to whom such personal information pertains. *See* § 2721(b)(11).

150.    Defendants did not obtain, use or disclose Personal Information for use in connection with bulk distribution for surveys, marketing or solicitations where the State has obtained the express consent of the person to whom such personal information pertains. *See* § 2721(b)(12).

---

[1] A private toll transportation facility is a private entity to which toll authority has been granted for a facility under a 1604 toll program. *See e.g.* 23 CFR § 950.3.

151.     Defendants did not obtain, use or disclose Personal Information for use by any requester where the requester demonstrates it has obtained the written consent of the individual to whom the information pertains. *See* § 2721(b)(13).

152.     Defendants did not obtain, use or disclose Personal Information for use in connection with any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety. *See* § 2721(b)(14).

153.     As described herein, Defendants are private entities acting for their own financial gain and not for a purpose related to the operation of a motor vehicle or public safety.

154.     Pursuant to 18 U.S.C. § 2724(b), Plaintiffs and Class members are entitled to actual damages, but not less than liquidated damages, in the amount of $2,500 for each violation of the DPPA.

155.     In addition, Plaintiffs and Class members are entitled to punitive damages due to Defendants' willful and/or reckless violation and disregard of the law.

## JURY DEMAND

156.     Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of the Class; and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

B.     For an order declaring that Defendants' conduct violates the DPPA;

C.     For an order awarding Plaintiffs and the Class actual and statutory damages to the maximum extent allowable;

D.     For an order awarding attorneys' fees and costs;

E.      For an order awarding punitive damages;

F.      For an order awarding pre-and post-judgment interest;

G.      For injunctive relief to stop the unlawful practice; and

H.      For such other and further relief as the Court deems just and proper.


Respectfully submitted this 23rd day of February, 2024.

*s/ Scott A. Kamber*
Scott A. Kamber (CO Bar No. 51857)
KAMBERLAW LLC
201 Milwaukee Street, Suite 200
Denver, CO 80206
Tel.: 212.920.3072
Fax: 212.202.6364
E-mail: skamber@kamberlaw.com

Steven L. Woodrow (CO Bar No. 43140)
WOODROW PELUSO
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
Tel.: 720.213.0675
Email: swoodrow@woodrowpeluso.com

Naomi. B. Spector (CA Bar No. 222573)
(*pro hac vice* forthcoming)
KAMBERLAW LLP
1501 San Elijo Hills Road South
Suite 104-212
San Marcos, CA 92078
Tel.: 310.400.1053
Email: nspector@kamberlaw.com

*Attorneys for Plaintiffs and putative Class*
